UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SANDY MILIAN RODRIGUEZ,

　　　　　　　　Petitioner,

　　v.

LAURA HERMOSILLO, et al., *et al.*,

　　　　　　　　Respondents.

Case No. C26-282-SKV

ORDER GRANTING PETITION FOR
WRIT OF HABEAS CORPUS

Petitioner Sandy Milian Rodriguez is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  Petitioner, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in which he asserts that his constitutional right to due process under the Fifth Amendment to the United States Constitution has been violated by his re-detention after release from custody and his prolonged continued detention.  *See* Dkt. 1 at 23-25.  Petitioner submitted with his petition the declaration of his counsel, Olia Catala.  Dkt. 1-4.  Respondents have filed a return (Dkt. 5), together with the supporting declarations of ICE Deportation Officer Kurtis Reed (Dkt. 6) and Respondents' counsel Michelle Lambert (Dkt. 7).  Petitioner has filed a traverse to the return.  Dkt. 8.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

The Court, having reviewed the parties' submissions and the governing law, finds that Respondents' re-detention of Petitioner without prior notice or an opportunity to be heard violated his constitutional right to due process.  Accordingly, the Court GRANTS Petitioner's federal habeas petition, ORDERS his immediate release from custody under the same conditions previously imposed, and further ORDERS that he may not be re-detained without first being provided adequate notice of the grounds for his re-detention and a hearing before a neutral decisionmaker.

## I.   BACKGROUND

Petitioner is a 33-year-old native and citizen of Cuba.  *See* Catala Decl., Ex. A; Reed Decl., ¶ 4.  Petitioner entered the United States without inspection on April 1, 2022, and was apprehended by United States Border Patrol shortly thereafter.  *See* Catala Decl., Ex. A; Reed Decl., ¶¶ 4-5.  Petitioner was released on an order of recognizance ("OREC") on April 2, 2022.  *See* Catala Decl., Ex. B; Reed Decl., ¶ 6.  The Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA") on the same day placing Petitioner in removal proceedings under § 240 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229a, in the Miami immigration court.  Catala Decl., Ex. A; Reed Decl., ¶ 7; Lambert Decl., Ex. C.  The NTA charged Petitioner with being removable under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for having entered the United States without being admitted or paroled.  *Id*. On September 30, 2022, Petitioner file a *pro se* Application for Asylum and Withholding of Removal.  *See* Dkt. 1 at 6; Reed Decl., ¶ 8.

On May 27, 2025, Petitioner appeared *pro se* for a master calendar hearing before an immigration judge ("IJ") in the Miami immigration court, and DHS moved to dismiss Petitioner's removal proceedings under 8 C.F.R. § 239.2, purportedly because of "changed

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 2

circumstances." *See* Dkt. 1 at 7; Reed, ¶ 9; Lambert Decl., Ex. E.  The IJ granted DHS's motion and dismissed the proceedings.  *Id.*  After the master hearing concluded, Petitioner was immediately apprehended by ICE Office of Enforcement and Removal Operations ("ERO") officers and taken into custody.  *See* Dkt. 1 at 7; Reed Decl., ¶ 10; Lambert Decl., Ex. F.  On the same day, ERO processed Petitioner for expedited removal under INA § 235(b)(1), 8 U.S.C. § 1225(b)(1) and ERO determined Petitioner was removable.  *See* Reed Decl., ¶ 10; Lambert Decl., Ex. G.  Petitioner was served with this decision on May 27, 2025, and was detained pursuant to § 1225(b)(1).  *Id.*  Following his arrest in Miami, Petitioner was transferred multiple times to various ICE detention facilities throughout the Southern United States before arriving at NWIPC on June 19, 2025.  *See* Reed Decl., ¶¶ 10-11, 13-15.

On June 2, 2025, Petitioner, through counsel, filed a timely appeal of the IJ's dismissal of his removal proceedings with the Board of Immigration Appeals ("BIA").  *See* Dkt. 1 at 7; Reed Decl., ¶ 12.  The BIA acknowledged the appeal on June 3, 2025, and the appeal currently remains pending.  *See* Catala Decl., Exs, D, E; Reed Decl., ¶ 12.

On July 1, 2025, the Tacoma immigration court held a bond hearing at Petitioner's request, and the IJ denied bond on the grounds that he lacked jurisdiction because Petitioner was subject to mandatory detention.  Catala Decl., Ex. F; Reed Decl., ¶ 16.  Petitioner filed a second request for a bond hearing on November 3, 2025, and the IJ denied the request upon finding that Petitioner had not demonstrated materially changed circumstances since his last bond hearing.  Catala Decl., Ex. G; Reed Decl., ¶ 20.

On July 30, 2025, Petitioner advised ERO he was afraid to return to Cuba, and ERO referred Petitioner to United States Citizenship and Immigration Services ("USCIS") for an interview.  Reed Decl., ¶ 17.  ERO sent documents to USCIS for a credible fear interview on

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 3

August 27, 2025, but the USCIS interview was thereafter administratively closed because of Petitioner's pending appeal with the BIA. *Id.*, ¶¶ 18-19.

Officer Reed avers in his declaration that Petitioner cannot be removed while his appeal is pending with the BIA, as his removal is subject to "an auto-stay." Reed Decl., ¶ 21. Officer Reed further avers that should the BIA dismiss Petitioner's appeal, ERO believes there is a significant likelihood of Petitioner's removal to Mexico in the reasonably foreseeable future as Mexico has been accepting Cuban citizens. *Id.*, ¶ 22. On January 21, 2026, ERO completed removal documents to Mexico for Petitioner, and Officer Reed avers that Petitioner will be notified of his anticipated removal to Mexico if the BIA dismisses his appeal. *Id.*, ¶ 23.

## II.   DISCUSSION

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, Petitioner seeks release from custody on the grounds that his detention violates his rights under the Due Process Clause of the Fifth Amendment, and he identifies two grounds for relief in his petition: (1) his re-detention in May 2025 violated his procedural due process rights because he was not provided the process he was due, including written notice explaining the basis for the revocation of his release and a pre-deprivation hearing before a neutral decisionmaker to determine whether his re-detention was justified; and (2) his continued detention violates his substantive due process rights because it has become excessive in relation to any legitimate governmental purpose. *See* Dkt. 1 at 23-25.

Respondents argue in response that Petitioner is lawfully detained because he is subject to expedited removal proceedings under 8 U.S.C. § 1225(b)(1) and his detention is therefore statutorily mandated under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). *See* Dkt. 5.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

**A.      Statutory Basis for Detention**

The first question the Court must address is which statutory provision governs Petitioner's current detention.  Petitioner argues that the controlling authority for his custody is 8 U.S.C. § 1226(a) while, as noted above, Respondents argue that Petitioner is detained under 8 U.S.C. § 1225(b)(1).  *See* Dkt. 1 at 15; Dkt. 5 at 7.

Section 1225 authorizes the Government to detain certain noncitizens seeking admission into the United States.  *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).  Section 1225(b) "applies primarily to [noncitizens] seeking entry into the Unites States ('applicants for admission' in the language of the statute)." *Id.* at 297.  Noncitizens are considered "applicants for admission" to the United States when they "arrive" in the United States or are "present" in this country but have "not been admitted."  8 U.S.C. § 1225(a)(1).  "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287.  Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id*. (citing § 1225(b)(1)(A)(i)).  Noncitizens who fall under § 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.*  Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id*.  Applicants for admission under either § 1225(b)(1) or § 1225(b)(2) are subject to mandatory detention

In contrast, 8 U.S.C. § 1226(a) is broader than its counterpart and is the "default rule" for noncitizens present in the United States who are arrested and placed in immigration detention. *See Jennings*, 583 U.S. at 303.  Section 1226(a) permits the government to release a detainee on bond during the pendency of the detainee's removal proceedings. *Id.*

Petitioner argues that § 1226(a) governs his detention because he was expressly processed, charged, and released under that statutory framework after he entered the country in April 2022.  Dkt. 1 at 15.  Petitioner notes that in the NTA issued the day following his entry, DHS officers had the opportunity to classify him as an "arriving alien" subject to § 1225(b) but did not do so.  *See id.* at 16; Catala Decl. Ex. A.  Petitioner was instead classified as "an alien present in the United States who has not been admitted or paroled" and was charged with being removable under INA § 212(a)(6)(A)(i), a charge which Petitioner maintains "is ordinarily associated with post-entry detention governed by 8 U.S.C. § 1226(a)."  Dkt. 1 at 16.

Petitioner further notes that the OREC form issued the same date as the NTA states that: "In accordance with section 236 of the Immigration and Nationality Act . . . you are being released on your own recognizance[.]"  *Id.* at 15; Catala Decl., Ex. B.  INA § 236 is codified at 8 U.S.C. § 1226.  Petitioner maintains that "DHS's express invocation of § 236 reflects a formal determination that his custody was governed by discretionary detention under § 1226(a), not mandatory detention under . . . § 1225(b)."  Dkt. 1 at 15.

Respondent argues that though Petitioner was not initially processed for expedited removal, the circumstances at the time of his apprehension control the detention authority, which would place him within the purview of § 1225(b), which mandates detention.  Dkt. 5 at 7.  In making this argument, Respondents rely on an order issued in another case filed in this district, *Maldonado v. Bostock*, 2023 WL 5804021 (W.D. Wash. 2023), which presented the question of whether the petitioner was detained under § 1225 or § 1226.  *See id.*  In *Maldonado*, DHS detained the petitioner under § 1226(a) but when he thereafter appeared for a bond hearing, the IJ denied bond on the grounds that the petitioner was detained under § 1225(b)(2)(A) and therefore subject to mandatory detention.  *Id.*, at *2.  The petitioner filed an appeal of the IJ's decision to

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 6

the BIA and also filed a federal habeas petition.  *See id.*  The federal habeas court, in an order directing supplemental briefing, expressed the view that DHS did not have discretion to choose between §§ 1225 and 1226 when it processed an applicant for admission and therefore requested additional briefing "regarding DHS's discretion and the degree of deference, if any, the Court must accord to DHS's classifications[.]"  *Id.*, at * 4.

Notably, however, the court never conclusively resolved the issue as the case was dismissed on stipulation of the parties after the BIA, in ruling on the petitioner's appeal of the IJ's bond decision, agreed that the IJ was not precluded from reviewing the petitioner's bond and remanded the case to the IJ for adjudication of the petitioner's request for a custody re-determination under § 1226(a).  *See Maldonado v. Bostock*, No. C23-00760-LK-BAT, Dkt. 20.  As the court in *Maldonado* never conclusively resolved the question at issue here, Respondents' reliance on the case is misplaced.

Respondents also argue that due process did not require a pre-deprivation hearing before re-detaining Petitioner in May 2025 because the removal proceedings that Petitioner maintains were initiated under § 1226(a) were dismissed, and thus, Petitioner was no longer subject to the OREC that authorized his release on conditions.  Dkt. 5 at 8.  However, at present, Petitioner has an appeal pending of the IJ's dismissal of his original removal proceedings and, thus, he remains in removal proceedings under 8 U.S.C. § 1229a and not the subsequently initiated expedited removal proceedings.[1]  *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1136 (D. Or. 2025); *see also Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 413-14 (S.D.N.Y. 2025).  The Court

---

[1] Petitioner presumably cannot be in two separate removal proceedings at the same time, as evidenced by the fact that the USCIS asylum interview scheduled for Petitioner in the subsequently initiated expedited removal proceedings was terminated because of Petitioner's pending appeal to the BIA of the dismissal of his original removal proceedings.  *See* Reed Dec., ¶¶ 18-19.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 7

therefore concludes that Petitioner remains subject to the OREC issued in conjunction with his original removal proceedings and that his detention is currently governed by § 1226(a). The Court now turns to the substance of Petitioner's due process claim.

**B.      Procedural Due Process**[2]

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). It is well established that due process rights extend "to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

While due process is flexible and adequate procedural protections can vary based on the circumstances, *Mathews*, 424 U.S. at 334, courts look to the three-part test established in *Mathews v. Eldridge* to determine what procedures suffice. The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

---

[2] Because the Court concludes Petitioner is entitled to relief on his procedural due process claim, it need not address Petitioner's substantive due process claim.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8

*Id.* at 335.  "In *Rodriguez Diaz v. Garland* [53 F.4th 1189 (9th Cir. 2022], the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in 'the immigration detention context[.]'" *E.A.T. – B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases employing the *Mathews* factors in similar immigration contexts).  Petitioner suggests the same framework and principles apply here.  *See* Dkt. 1 at 13-15.

Respondents do not engage in any analysis of the *Mathews* factors as applied to this case, arguing only that due process did not require a pre-deprivation hearing before ICE re-detained Petitioner in May 2025 because his removal proceedings had by then been dismissed and he was no longer subject to the "prior OREC."  Dkt. 5 at 8.  Respondents maintain that DHS had authority to detain Petitioner to commence the expedited removal process.  *Id.*  For reasons already discussed, this Court disagrees.  Consistent with prior precedent, this Court deems the *Mathews* test applicable in the context of this re-detention case and will therefore address the three factors below.

First, Petitioner has a constitutionally protected interest in his continued liberty.  Petitioner's interest in not being detained "is the most elemental of liberty interests[.]"  *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  When Petitioner was released by DHS in April 2022, he acquired a liberty interest protected by the Due Process Clause.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."); *see also Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025).

Petitioner was released on his OREC almost three years before he was re-detained and during that time it appears he complied with the conditions of his release as no violations are

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9

reported in Respondents' materials.  The record indicates that he was also granted employment authorization, settled in Florida, and filed a timely application for asylum while out of custody. *See* Dkt. 1 at 7.  Petitioner's actions during his release demonstrate his reasonable reliance on, and the weight of, his interest in his continued liberty.  The first *Mathews* factor therefore weighs in Petitioner's favor.

Second, the circumstances of Petitioner's arrest underscore the high risk of erroneous deprivation of his liberty absent a pre-detention hearing.  As noted above, nothing in the record suggests Petitioner violated any of the conditions of his OREC in the three years he was out of custody.  Petitioner then appeared as scheduled for his initial master calendar hearing, without the benefit of counsel, and DHS successfully moved to dismiss Petitioner's removal proceedings for the apparent purpose of expediting his removal from the United States.  Here, Petitioner had apparently done everything asked of him while on release waiting for his immigration court proceedings to run their course, only to have those proceedings abruptly terminated and his release revoked without notice or a pre-deprivation hearing before a neutral arbiter. This maximized the risk Petitioner's liberty interest would be erroneously deprived.  The second *Mathews* factor weighs in Petitioner's favor.

Finally, the government's countervailing interest in detaining Petitioner prior to a hearing is minimal.  Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community.  *Zadvydas*, 533 U.S. at 690 (government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community").  While providing a hearing before re-detaining an individual would require expending resources (money and time), such costs are outweighed by the risk of erroneously depriving an individual of a significant

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 10

liberty interest.  *See*, *e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").  Thus, the third *Mathews* factor also weighs in favor of Petitioner.

In sum, all three *Mathews* factors weigh in Petitioner's favor and, thus, this Court finds Petitioner should be immediately released from custody.  Petitioner, in conjunction with his request for release from custody, asks that Respondents be prohibited from re-detaining him without providing written notice and a hearing prior to re-detention at which Respondents would bear the burden of proving by clear and convincing evidence that he is a flight risk or a danger to the community, and that no less restrictive alternatives would suffice.  *See* Dkt. 1 at 26.

The Court concurs to an extent.  Consistent with the requirements of due process, Respondents must provide written notice and a hearing before a neutral decisionmaker prior to any re-detention of Petitioner, but only while Petitioner's original removal proceedings remain pending.[3]  The Court also finds that Respondents bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community at any subsequent re-detention hearing.  *See Pinchi v. Noem*, 792 F. Supp. 3d 1012, 1038 (N.D. Cal. July 24, 2025) (Holding Petitioner may not be detained unless the government demonstrates at a bond hearing, by clear and convincing evidence, she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms.).  To the extent Petitioner requests that Respondents also be required to consider alternatives to detention at any re-detention hearing, he fails to establish this additional procedural protection is constitutionally required.  *See Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024).

---

[3] Should the BIA reject Petitioner's appeal of the dismissal of his original proceedings, this prohibition will no longer apply.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 11

### III.    CONCLUSION

For the foregoing reasons, the Court GRANTS the habeas petition (Dkt. 1) and ORDERS that Petitioner be RELEASED from immigration detention within 24 hours on conditions consistent with those in place at the time of his re-detention.  Respondents shall file a certification within 48 hours that Petitioner has been released.  The Court further ORDERS that Petitioner shall not be re-detained during the pendency of his original removal proceedings without first being provided adequate notice and a hearing before a neutral decisionmaker at which Respondents bear the burden of proof.  Finally, any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.  The Clerk shall send copies of this Order to all counsel of record.

Dated this 27th day of February, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 12